IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JOSEPH R. TOMELLERI, | ) | |
| | ) | |
| Plaintiff- Judgment Creditor, | ) | |
| | ) | |
| v. | ) | Case No. 14-2441-CM |
| | ) | |
| QUICK DRAW, INC., | ) | |
| | ) | |
| Defendant-Judgment Debtor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ST. PAUL FIRE AND MARINE | ) | |
| INSURANCE COMPANY and | ) | |
| | ) | |
| TRISURA GUARANTEE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Garnishees. | ) | |

## REPORT AND RECOMMENDATION

In this copyright case, the plaintiff, Joseph R. Tomelleri, obtained a significant judgment against the defendant, Quick Draw, Inc.[1] Thereafter, Tomelleri requested, and the court issued, writs of garnishment to Quick Draw's two insurance carriers, St. Paul Fire & Marine Insurance Company and Trisura Guarantee Insurance Company, for indemnity of the judgment entered.[2] Trisura, which is a Canadian company, has filed a motion to dismiss (or

---

[1]ECF Nos. 38 & 39. Judgment was entered in the amounts of $1,380,000 in statutory damages, $647,272 in prejudgment interest, and $43,677 in attorneys' fees and expenses, with post-judgment interest accruing at a rate of $378 per day.

[2]ECF Nos. 44 (Trisura) & 45 (St. Paul).

in the alternative to quash) under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction (ECF No. 51).  The presiding U.S. District Judge, Carlos Murguia, referred the motion to the undersigned U.S. Magistrate Judge, James P. O'Hara, for a report and recommendation.[3] Because the undersigned concludes that exercising jurisdiction over Trisura would offend traditional notions of fair play and substantial justice, the undersigned recommends that Judge Murguia grant Trisura's motion to dismiss for lack of personal jurisdiction.

To establish the court's personal jurisdiction over Trisura, Tomelleri must show "that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[4]  "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process," however, the court "proceed[s] directly to the constitutional issue."[5]

Due process may be demonstrated in one of two ways.  First, a plaintiff may show a foreign defendant has "continuous and systematic general business contacts" with the forum state, permitting the exercise of "general jurisdiction" by the court.[6]  Alternately, a plaintiff

---

[3]ECF No. 55.

[4]*TH Agric. & Nutrition, LLC*, 488 F.3d 1282, 1286 (10th Cir. 2007) (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005)).

[5]*OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998) (quoting *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994)).

[6]*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984).

may show the foreign defendant has purposefully-directed contacts with the forum state *and* that the exercise of jurisdiction over the defendant would be "reasonable" under the circumstances, thereby permitting the exercise of "specific jurisdiction."[7]   In this case, Tomelleri concedes that the court does not have general jurisdiction over Trisura.[8]   Thus, the question before the court is whether the exercise of specific jurisdiction over Trisura would offend due process.[9]

The specific-jurisdiction inquiry involves two prongs.  First, a district court must "ask whether the nonresident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'"[10]   Second, if the defendant has sufficient minimum contacts, the district court must "ask whether the court's 'exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.'"[11]   This second prong "turns on whether the exercise of personal

---

[7]*TH Agric.*, 488 F.3d at 1287 (internal quotations and citations omitted).

[8]ECF No. 68 at 5 ("Mr. Tomelleri admits, based upon *Daimler AG v. Bauman*, it is unlikely the State of Kansas has general jurisdiction over Trisura. *See Daimler AG v. Bauman*, 134 S.Ct. 746 (2014).").

[9]*See TH Agric.*, 488 F.3d at 1287 ("We therefore ask whether the exercise of specific personal jurisdiction over the Insurers would offend due process.").

[10]*Id.* at 1287 (quoting *OMI Holdings,* 149 F.3d at 1091 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980))).

[11]*Id.* (quoting *OMI Holdings,* 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987))).

jurisdiction is 'reasonable' under the circumstances of a given case."[12] "[A]n interplay exists between the two components, such that, depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry."[13] "In other words, 'the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less the defendant need show in terms of unreasonableness to defeat jurisdiction.'"[14]

A.    Prong One: Whether Trisura has Minimum Contacts with Kansas

Under the first prong of the specific-jurisdiction inquiry, the court examines whether Trisura has such "minimum contacts" with Kansas "that he should reasonably anticipate being haled into court" here.[15] "A defendant may reasonably anticipate being subject to suit in the forum state 'if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities.'"[16]

Trisura is a Canadian specialty-lines insurer with its principal place of business in

---

[12]*Id.* (quoting *OMI Holdings,* 149 F.3d at 1091).

[13]*OMI Holdings,* 149 F.3d at 1091–92 (internal quotation and citation omitted).

[14]*TH Agric.*, 488 F.3d at 1287 (quoting *OMI Holdings,* 149 F.3d at 1092).

[15]*Id.* (quoting *OMI Holdings,* 149 F.3d at 1091 (quoting *World–Wide Volkswagen*, 444 U.S. at 297)).

[16]*Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Toronto, Ontario.  It conducts all of its business operations in Canada, and does not directly insure any persons or entities residing in Kansas.[17]  In this proceeding, plaintiff is attempting to recover under a technology-professional insurance policy Trisura issued to Quick Draw, also a Canadian company, in Canada.  There is no indication in the record that any of the dealings related to the policy or coverage decisions on Tomelleri's claim against Quick Draw occurred in Kansas.  Because the above interactions in no way involve Kansas, they "are

---

[17]It is of no matter that the affidavit submitted by Rebekah Alberga, Trisura's Vice President of Claims, in support of this fact used the term "to the best of my knowledge." ECF No. 68-1 at 1.  The affiant swears that all statements in the affidavit are based on her personal knowledge.  This court has ruled that the qualifying language "'to the best of my knowledge and ability' . . . substantially complies with the requirements" for a valid declaration set by 28 U.S.C. § 1746.  *Phillips v. Martin*, No. 06-2442-KHV, 2007 WL 4139646, at *1 (D. Kan. Nov. 16, 2007); *see also In re E. Livestock Co.,* No. 10-93904-BHL, 2012 WL 4933294, at *3 (Bankr. S.D. Ind. Oct. 16, 2012) ("That the veracity of Peoples's allegations is affirmed 'to the best of my knowledge' is of no moment, since 'personal knowledge' includes inferences, and 'all knowledge is inferential.'" (internal citations and quotations omitted)); *Cobell v. Norton*, 391 F.3d 251, 260 (D.C. Cir. 2004) (holding district court erred in ruling declarations with the language "to the best of [the declarant's] knowledge, information or belief" were deficient).

Tomelleri's response brief makes the broad argument that, based on the "best of my knowledge" language in the affidavit, "discovery on personal jurisdiction should be allowed."  ECF No. 68 at 4–5.  Because the court has found such language immaterial, however, Tomelleri's discovery request is not supported on this basis.  Tomelleri has suggested no other reason for jurisdictional discovery.  For example, he has not indicated how additional discovery might impact the court's analysis on the well-established due-process factors at issue in Trisura's motion to dismiss.  Thus, there is no indication that discovery would be proportional to the needs of the case, as required by Fed. R. Civ. P. 26(b)(1).  Because Tomelleri's broad discovery request is wholly unsupported, it is denied. *See World Wide Ass'n of Specialty Programs & Sch.*, 138 F. App'x 50, 52 (10th Cir. 2005) ("In the absence of an explicit, supported motion for discovery, this court cannot say that the district court abused its discretion in denying the request.").

insufficient to establish minimum contacts with the state;"[18] Tomelleri does not argue to the contrary.

Rather, Tomelleri asserts that Trisura has sufficient minimum contacts with Kansas solely because the insurance policy it issued Quick Draw contained a  territory-of-coverage clause that included suits brought in Kansas.   The territory-of-coverage clause stated:

> Policy Territory: This Policy applies to Wrongful Acts committed by the Insured anywhere in the world provided that suit is brought against the Insured in Canada or the United States of America, their territories or possessions.[19]

Tenth Circuit caselaw directly on-point supports Tomelleri's position.  First, in *OMI Holdings*, the court addressed "whether a foreign insurer establishes minimum contacts with a forum by selling an insurance policy with a territory of coverage clause which includes the forum."[20]  After reviewing conflicting treatment of the question by other circuits, the Tenth Circuit concluded, "by contracting to defend the insured in the forum state, the insurer creates some contact with the forum state."[21]  The court further concluded that the plaintiff's complaint that the insurer wrongfully refused to defend under the policy established the

---

[18]*TH Agric.*, 488 F.3d at 1288 (finding insurers' actions insufficient to establish minimum contacts with Kansas where insurers did not solicit business in Kansas, where the policies were issued in a foreign country, and where "all dealings relating to the policies and coverage" occurred in a foreign country; but finding minimum contacts with Kansas based solely on worldwide territory-of-coverage clauses in the policies).

[19]ECF No. 68-3 at 2.

[20]*OMI Holdings,* 149 F.3d at 1092.

[21]*Id.* at 1095.

required nexus that plaintiff's claims "arose out of" defendant's forum-related activities.[22]

Nine years later, the Tenth Circuit again addressed the issue in *TH Agriculture*.  In *TH Agriculture*, the underlying insurance policy's broad territory-of-coverage clause did not require the insurer to defend litigation brought in foreign forums, but it reserved the insurer's right to do so.[23]  The court ruled,

> [I]nsurers establish minimum contacts with a forum state by affirmatively choosing to include the forum state in the territory of coverage. That is, insurers quite clearly avail themselves of the privilege of conducting business in a forum state when that state is included in an insurance policy's territory of coverage. . . .  An insurance company offers this type of broad coverage to induce customers to buy its policies and to pay higher premiums for them.  The benefits thereby accruing to the insurance company are neither fortuitous nor incidental.[24]

The court held that the plaintiff's claims seeking coverage under the policy for judgments entered in the District of Kansas arose out of the insurer's affirmative action of including Kansas within the covered territory.[25]

Based on *OMI Holdings* and *TH Agriculture*, the court concludes that Tomelleri has satisfied his burden of demonstrating that Trisura has minimum contacts with Kansas based on the underlying policy's nationwide territory-of-coverage clause.  *However*, the Tenth

---

[22]*Id.*

[23]488 F.3d at 1289.

[24]*Id.* at 1290 (quoting *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 287 (4th Cir. 1987) (internal quotations and modification omitted)).

[25]*Id.* at 1291–92.

Circuit has recognized—in both *OMI Holdings* and *TH Agriculture*—that when a finding of minimum contacts is "based solely on an insurance policy's territory of coverage clause," those contacts are "qualitatively low on the due process scale."[26]  As noted above, "the weaker the plaintiff's showing on minimum contacts, the less the defendant need show in terms of unreasonableness to defeat jurisdiction.'"[27]  The court now turns its attention to the unreasonableness prong of specific jurisdiction.

      B.    <u>Prong Two: Whether the Exercise of Jurisdiction is so Unreasonable as to Violate Notions of "Fair Play and Substantial Justice"</u>

"Even when a defendant has purposefully established minimum contacts with a forum state, 'minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction.'"[28]  Thus, on a case-specific basis, the court assesses whether an exercise of jurisdiction is reasonable by weighing five factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies."[29]

      1.  <u>The Burden on Trisura</u>.  The first reasonableness factor is the burden on the foreign

---

[26]*OMI Holdings,* 149 F.3d at 1095; *TH Agric.,* 488 F.3d at 1291.

[27]*TH Agric.*, 488 F.3d at 1287 (quoting *OMI Holdings,* 149 F.3d at 1092).

[28]*Id.* at 1292 (quoting *Burger King*, 471 U.S. at 477–78).

[29]*OMI Holdings*, 149 F.3d at 1095 (citing *Asahi*, 480 U.S. at 113).

defendant of litigating the dispute in the chosen forum.  The Tenth Circuit has stated that, though not dispositive, this factor "is of primary concern in determining the reasonableness of personal jurisdiction."[30]  When the defendant is from another country, the court must be particularly cognizant of whether the burden of appearing in a distant forum is onerous, and "'great care and reserve should be exercised' before personal jurisdiction is exercised over the defendant."[31]

As discussed above, Trisura is a Canadian company that maintains offices and conducts business exclusively in Canada.  It maintains no offices in Kansas (or the United States) and insures no residents of Kansas (or the United States).  It is named in this proceeding by virtue of an insurance policy that was negotiated and issued in Canada to another Canadian company, Quick Draw.  There is no dispute that Canadian law will govern the determination of whether coverage exists under the insurance contract.  Trisura will  be required to travel to the middle of another country if the action remains in this forum.  These circumstances are very similar to those in *OMI Holdings*.  Finding in favor of the Canadian defendants who opposed appearing in Kansas, the Tenth Circuit wrote:

> The burden on Defendants in this case is significant.  Defendants are Canadian corporations who have no license to conduct business in Kansas, maintain no offices in Kansas, employ no agents in Kansas, and insure no Kansas residents. Defendants issued insurance policies in Canada to a Canadian company in accordance with Canadian law.  In order to litigate the case in Kansas, Defendants will not only have to travel outside their home country, they will

---

[30]*Id.* at 1096.

[31]*Id.* (quoting *Asahi*, 480 U.S. at 114).

also be forced to litigate the dispute in a foreign forum unfamiliar with the Canadian law governing the dispute.  Accordingly, we find that this factor weighs strongly in Defendants' favor.[32]

Tomelleri argues that, based on representations on Trisura's public website touting its "excellent" financial strength and its principal shareholder's assets, "Trisura has the financial ability to defend, and is capable of defending, this lawsuit in Kansas."[33]  Tomelleri further states that based on the territory-of-coverage clause in the insurance policy, Trisura "must be familiar with, and capable of, litigating in the United States."[34]

Although Tomelleri is likely correct that Trisura is familiar with, and capable of, litigating in the United States,[35] this also would have been true in *OMI Holdings*.  There, the defendant Canadian insurance companies had similar territory-of-coverage clauses agreeing to defend claims in United States courts.[36]  The Tenth Circuit did not, however, consider such familiarity in its analysis of the first reasonableness factor.  Likewise, the *OMI Holdings* court did not consider the financial standings of the defendant insurance companies in evaluating the burden that would befall them should they be forced to litigate in Kansas. Later, in *TH Agriculture*, the Tenth Circuit did recognize that "modern transportation and

---

[32]*Id.*

[33]ECF No. 68 at 9.

[34]*Id.*

[35]The court questions the relevance of this assertion, given that the inquiry is whether Trisura would be burdened by litigating the dispute in *Kansas* specifically.

[36]149 F.3d at 1092.

communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,"[37] but the record in this case does not indicate Trisura routinely engages in business dealings in Kansas.  And, in any event, the *TH Agriculture* court concluded that, "while modern advances may minimize the burden on the Insurers, they are not significant enough to tip the scales in *favor* of exercising jurisdiction."[38] Because the considerations found relevant to the Tenth Circuit in *OMI Holdings* are present here, the court concludes that this factor weighs in Trisura's favor.[39]

2. <u>Kansas's Interest in Resolving the Dispute</u>.  The second consideration is the forum state's interest in resolving the instant dispute.  "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."[40]  Tomelleri is a Kansas resident who, through no fault of his own, was damaged in Kansas by Quick Draw's acts of infringement.  Moreover, though less significant, the underlying dispute was litigated in this court and it is the judgment entered by this court that

---

[37]488 F.3d at 1293.

[38]*Id.* (emphasis in original).

[39]*OMI Holdings*, 149 F.3d at 1096.  *See also Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004) ("In this case, the burden on the defendant is significant.  Cameco is a Canadian corporation with principal offices in Saskatchewan, and it has no office or property in Colorado, is not licensed to do business in Colorado, and has no employees in Colorado.  Cameco's officers and employees 'will not only have to travel outside their home country, they will also be forced to litigate the dispute in a foreign forum unfamiliar with the Canadian law governing the dispute.'  Therefore, this factor weighs against an exercise of personal jurisdiction over Cameco." (quoting *OMI Holdings*, 149 F.3d at 1096)).

[40]*OMI Holdings*, 149 F.3d at 1096 (citing *Burger King*, 471 U.S. at 483).

Tomelleri is attempting to recover.  On the other hand, Canadian law, not Kansas law, will govern the resolution of the dispute, and this weighs against Kansas's interests.[41]  Given these considerations, the court finds this factor only slightly favors Tomelleri.

3.  <u>Tomelleri's Interest in Convenient and Effective Relief</u>.  Next, the court considers "whether the Plaintiff may receive convenient and effective relief in another forum."[42]  This factor may weigh in a plaintiff's favor when his "chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit."[43]  But when another forum's laws will govern the terms of the dispute and the majority of witnesses are located in that forum, this factor may weigh in favor of a defendant.[44]

Tomelleri argues that litigating this matter in Canada would cause him "hardship" because he would have to retain counsel in Canada and thereby diminish the judgment owed him.[45]  He further asserts he should not "be forced to appear personally in Canada to set the

---

[41]*See Benton*, 375 F.3d at 1079 (holding that "this factor does not weigh heavily in favor of either party" because although Colorado has an interest in providing a forum for its resident, "the parties agree that Canadian law will govern the dispute").

[42]*OMI Holdings*, 149 F.3d at 1097.

[43]*Id.*

[44]*Id.*

[45]ECF No. 68 at 11.

factual foundation for the underlying judgment and garnishment action."[46]  The court finds significant, however, that there is no suggestion in this case that plaintiff would be so burdened by litigating in Canada that pursuing recovery from Trisura would be "practically foreclosed."  Tomelleri does not dispute that Canadian law will govern application of the insurance policy, nor that witnesses knowledgeable about the issues are located in Canada.  Thus, although Kansas would certainly be a more convenient forum for Tomelleri, the court finds that he may nonetheless receive convenient and effective relief in Canada.[47]  This factor weighs in Trisura's favor and against an exercise of jurisdiction.

     4.  The Interstate Judicial System's Interest in Efficient Resolution.  The fourth factor in the reasonableness inquiry examines "whether the forum state is the most efficient place to litigate the dispute."[48]  "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."[49]  This factor comes out as a wash.  As noted above, Canadian substantive law will govern this coverage dispute.  The decision to deny coverage to Quick Draw occurred in Canada.  In addition, the majority of potential

---

[46]*Id.*

[47]*See Benton*, 375 F.3d at 1079 (holding that because Colorado resident "has not established that litigating the matter in Canada would cause undue hardship to him," he "would be able to receive convenient and effective relief by bringing suit in Canada" and the factor weighed in the defendant's favor).

[48]*OMI Holdings*, 149 F.3d at 1097.

[49]*Id.* (internal citations omitted).

witnesses with knowledge of the terms of the policy and the reasons why coverage was denied are located in Canada.[50]  On the other hand, Tomelleri, who could be called to lay a foundation for the underlying claim, resides in Kansas and suggests that Quick Draw's access to his work occurred in Kansas.  Moreover, a concurrent garnishment proceeding against St. Paul is going forward in this case, and keeping the proceeding against Trisura here would avoid piecemeal litigation.  This factor does not strongly weigh in favor of either party.

    5.  The Interests of States and Foreign Nations in Advancing Fundamental Substantive Social Policies.  The final factor calls on the court to focus on "whether the exercise of personal jurisdiction by Kansas affects the substantive social policy interests of other states or foreign nations."[51]  Key to this inquiry "is the extent to which jurisdiction in the forum state interferes with [a] foreign nation's sovereignty."[52]  Considerations include "whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum

---

    [50]*See TH Agric.*, 488 F.3d at 1296 ("[T]he court must determine whether the . . . claims are covered events under the insurance policies. The relevant witnesses for this question are those who negotiated and entered into the contract . . . none of whom are located in Kansas and at least half of whom are residents of or have their principal place of business in [a foreign country]."); *see also Benton*, 375 F.3d at 1080 (holding that "litigating the dispute in Colorado would not be more efficient than in Canada" because "many of the witnesses in the dispute would be directors, officers, and employees of Cameco, all of whom are located in Canada," "the alleged wrong . . . occurred in Canada," and "Canadian law will govern the dispute").

    [51]*OMI Holdings*, 149 F.3d at 1097.

    [52]*Id.* at 1098.

resident."[53]  This factor tilts for Trisura.  It is significant that the policy contained a provision

requiring suits brought against Trisura to be "brought in a court of competent jurisdiction

within Canada."[54]   And it is significant (again) that Trisura is a Canadian company and

Canadian law will govern the garnishment dispute.   The relevant insurance contract was

entered in Canada between two Canadian corporations.   In these respects, the circumstances

here are nearly identical to those in *OMI Holdings*, in which the court held that the exercise

of  personal  jurisdiction  over  Canadian  corporations  would  interfere  with  Canada's

sovereignty:

> Exercising personal jurisdiction in Kansas would affect the policy interests of
> Canada.  Defendants are Canadian corporations.  They entered into insurance
> contracts in Canada, with Plaintiff's Canadian parent company.  The contracts
> are governed by Canadian law.  Moreover, when jurisdiction is exercised over
> a foreign citizen regarding a contract entered into in the foreign country, the
> country's  sovereign  interest  in  interpreting  its  laws  and  resolving  disputes
> involving its citizens is implicated.[55]

In sum, three of the five reasonableness factors weigh in favor of Trisura and against

exercising jurisdiction in Kansas.  Of the other two factors, one only slightly favors Tomelleri

and the other comes out as a wash, not favoring one side or the other.  The court concluded

---

[53]*Id.* (internal citations omitted).

[54]ECF No. 74-1 at 1 ("No suit or action by the Insured, or by any other person
claiming through the Insured, or on its behalf, shall lie against the Insurer unless such suit
or action is brought in a court of competent jurisdiction within Canada.").

[55]149 F.3d at 1098.  *See also Benton*, 375 F.3d at 1080 (holding that the exercise of
jurisdiction would affect Canada's policy interests because the defendant was a Canadian
corporation and Canadian law would govern the dispute).

above that Trisura's contacts with Kansas, based solely on the territoy-of-coverage clause in the insurance policy, were quite limited and "quantitatively low on the due process scale." As a result, Trisura "need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry."[56]   Because the majority of the five reasonableness factors weigh in Trisura's favor and are not diluted by the other two factors, the undersigned concludes that an exercise of personal jurisdiction over Trisura would offend traditional notions of fair play and substantial justice.   Therefore, the undersigned recommends that Judge Murguia grant Trisura's motion to dismiss for lack of personal jurisdiction.

 Dated February 8, 2017, at Kansas City, Kansas.

    s/ James P. O'Hara
    James P. O'Hara
    U.S. Magistrate Judge

---

[56]*Benton*, 375 F.3d at 1080 (citing *OMI Holdings*, 149 F.3d at 1092).